Thank you your honor. May it please the court I'm Dan Peterson for petitioner appellant Keith Baranski. I'd like to reserve three minutes of my time for rebuttal. As court knows under Brady and Giglio the prosecution is required to turn over all evidence to the defendant that's either exculpatory or might affect the credibility of prosecution witnesses. In this case the government had in its possession several categories of information that would have severely undermined the credibility of the prosecution's star witness James Carney and that information was held from was withheld from Mr. Baranski. Maybe even more importantly in this case the prosecution affirmatively represented for all of those categories of evidence that all impeachment evidence had already been turned over to counsel when it had not. Is the government obligated to discover and turn over material that's in the possession of the Bureau of Prisons? I think it would be if there was if there was a request for that and as it turns out some of the briefing was it's cleared up in our reply brief here your honor. Apparently no one noticed it I didn't that's why I brought it up in reply. There was some question as to whether or not the defense had access to the to the health records of Mr. Carney and what I didn't know at the end I think we could not get them because the if we subpoenaed it it had to go back through the prosecutor's office who had already refused to turn them over to us but in any event it turns out that in the in a hearing before magistrate judge Medler and it was way at the end of the hearing I think kind of out of order why no one noticed. Mr. Martin represented that he had been in touch with the Bureau of Prisons up in in Minnesota and that they had furnished him medical records and he'd been through them and that there was he's turned over everything that was of impeachment value in the case. So we have a representation that he turned over everything that was of value as far as the medical records is concerned. On the record it's quoted in our reply brief but later on it turns out you know almost 10 years afterwards it turns out that there were more records that had not been turned over. I'd like to talk principally to begin with about the rule 35 issue and I think the key error in the memorandum opinion in this case it's that it found that quote the government did not promise Carmy a further reduction in his sentence under rule 35 in return for his testimony at Mr. Bransky's trial. But there was clearly a discussion of that at the sentencing hearing and there was a sidebar that went on off the record first between counsel and Judge Weber and they went back on the record and Judge Weber very clearly made a 1.1 motion for which he reduced his Carmy sentence to 42 months and then basically went on to say after that in addition he said it's been represented to me depending upon certain circumstances that happen hereafter which you and counsel can discuss that there's a likelihood that a further reduction at some time in the future depending upon your continued cooperation may occur and the assistant US attorney Mr. Poehling was present for those statements and acknowledged them on the record. Then we've included in some of its in the addendum to our brief easily available there correspondence between Mr. Carmy and his attorneys Rogers and Rosenblum expressly elaborating elaborating that this was a rule 35 motion and referencing further follow-up conversations they had with Mr. Poehling over I think it went through the spring of the following year this was a sentence in a sensing hearing hearing was in November of 2001 and then these discussions went on up through 2002. Can you help me a little bit with a timeline? I'm interested in Judge Weber's sentencing. Yes. Help me with a timeline at what point in in the narrative of your case did this occur? Okay it occurred on November 8th 2001. Okay and help me with how that fits in with the principal events that you're relying on. Sure the Mr. Carmy was was arrested in the fall of 2000 I believe and Mr. Bransky then started to become entangled if you had kind of an unusual beginning with the government in in 2001 and his trial was in started on November 12th of 2002 so there's a it's about a one-year period between the sentencing hearing and when Mr. Bransky's trial was if that helps a little bit. Thank you. Okay and I do want to mention one thing. Counsel the briefs ignore what seems to me to be a significant question is why the standards should not apply to this motion. Why which standards? Successive habeas standards. I don't think there's been any abuse of the writ here if that's if that's your question. No no no no you ignored the requirements for success. If this were a habeas petition it'd be successive right? Yes. So it would not have it would have there would have been no jurisdiction in the district court. Well this is but this is a petition for quorum nobis and it's one where the quorum nobis does not apply where there is enough where there's an alternative remedy. The Donato question case and many there was no alternative remedy here your honor and the reason for that is because the reason there's no no other remedy is because none of these facts became known. It came out in a big cascade beginning in 2010 when the trial was actually took place. The habeas takes that into account. Well I guess what I'm saying is we had no factual basis for this because it had been essentially covered up or not it did come out in 2010 and by that point in time. Have you researched my question? I have not. Well Brown in the Fourth Circuit and Baptiste in the Third Circuit say that quorum nobis cannot be used to end around the habeas restrictions in HIPAA. Okay if you'd like I can submit a supplemental memorandum on that. No I've already researched it. I'm surprised no one frankly has thought of it since there's also contrary authority in the Ninth Circuit so we've got at least three circuits that have spoken on this and complete silence in this case. It's a very serious issue. All right. Counsel what about didn't wasn't Mr. wasn't this witness questioned about possible rule 35 relief? Yes Mr. Karmy he was asked whether that was whether he'd been offered anything he said I think that it was phrased in terms of whether he was expecting a further reduction in his sentence and he basically said you know here's the quote and you wanted another you expected you were going to get another deal for actually testifying didn't you and he answered I never said that and I never expected it. I've never been promised anything and as a matter of fact I've never asked for anything except for a transfer to another facility. In point of fact he was clearly expecting it as correspondence indicates with his counsel and he was unbelief when he didn't get it in December of 2002 right after his trial. So you know I mean I think this was a completely false statement by Mr. Karmy. Now what about the private investigator? Didn't the private investigator uncover at least some indicators of something along these lines? What the private investigator, Karmy told the private investigator that he might ask for a rule 35 in the future and you know but he didn't say anything about already having been offered one or expecting one I mean it was the the barest possibility and it was nothing on which we could have based an appeal or a post conviction motion or anything of that nature. Why was the witness asked about it? There was nothing there was no information there to indicate that that was. He was asked about it because because the investigator uncovered this you know or got that statement from Mr. Karmy and so Mr. Gardner the trial counsel asked him about it and Karmy flatly denied it and Karmy was there at the sentencing hearing and as well as his attorneys and Mr. Poehling and it was quite clear that an additional reduction was being offered in addition to the 5k 1.1 motion. So you think that because the witness denied it even though you had a reason to ask because the witness denied it that there was no there was inadequate notice or indication of this possible claim that it could have been brought up earlier? Inadequate proof I guess is what I'm trying to say there was nothing nothing to put his hands on and counsel for Mr. Baranski had asked Mr. Martin whether there was a rule 35 motion being considered and Mr. Martin said no he emphatically denied it and in fact he denies it to this day as I understand it and says that there never was a quote promise of a rule 35 and I'd like to promise and if you read the memorandum opinion from below the trial court and this is following the lead of the prosecution in this case at the evidentiary hang and so forth they always say that there was no quote promise well no there wasn't a promise per se there was a likelihood is the way that Judge Weber described it and these things by their nature are never likely to be a promise per se because it depends upon the performance of the case at a later time which is exactly what Judge Weber said based upon your continuing cooperation so . . . Is that the evidence the Judge Weber's statement in the transcript from 2001? Yes and the question is is it in evidence? No is that is that the sum total of the of the basis for this for this claim that Judge Weber made his statement of possibility of additional consideration if he continued to cooperate back in 2001? It's the claim itself if I may say so I mean he stated in an open court it was transcribed by the court reporter and then there is a whole train of correspondence after that and events that took place that indicate that Mr. Carmey definitely believed that he had an offer he would call it sometimes a I see that my time is up and I'll return in a few minutes thank you so much Mr. Drake May it please the court good morning your honors in order for the appellant to succeed in this proceeding your honors this court would have to find that the district court clearly erred in its findings of fact of which it made over a hundred and seventy-seven findings in its memorandum in order which is seventy-two pages long or that the district court committed legal error but not just any legal error it would have to be legal error that rises to the extraordinary level that is reserved for only the rarest of cases those in which the most fundamental errors of character are occur ones in which the integrity of the proceedings below are compromised that is not the case here your honors the parties here are in general agreement as to the application of the law in other words there's no disagreement that the court chose the correct law and applied it correctly at least as it relates to the quorum novus proceeding in terms of the council did the government argue to the district court my point no no your honor I heard your questions earlier that was not argued before the district court other than in the context of the abuse of the writ proceeding well it's correct it would have deprived the court of jurisdiction so we can we can consider it to sue a spotty right yes your honor I believe that this court could do that I think that while I'm unfamiliar with the case that you referred to your honor I do believe that your argument or that issue at least dovetails into our argument the government's argument in terms of the abuse of the writ and let me be clear on that from day one 15 years ago when this case originally started the petitioner or the appellant has known all of the information that is in the that is in his pleading in other words he may not have had the specific document but he's known all of the information and the substance of that information in fact he's litigated it on and before this body for years and in terms of the specific documents even though he didn't have all of the specific documents he knew where they were he knew how to get them and he chose not to and I think that that's the some that's the substance of our argument in terms of the abuse of the writ that either it's been litigated by the appellant in prior proceedings or that he knew about it and he chose not to litigate it when he had an opportunity to do so concerning the findings of fact your honors the appellant disagrees with some of the hundred and seventy-seven facts that were found by the district court he has not demonstrated however that those findings are clearly erroneous he doesn't argue that the court the district court at least in the evidentiary hearing misunderstood the certain facts instead he argues that the district court should have found those facts differently and that's not a clue that does not meet the clearly erroneous standard and the high burden that he has to meet furthermore what's important here your honors is is that the district court listened to the witnesses it assessed their credibility a USA paling who was the prosecutor who handled mr. car me's case initially testified at the evidentiary hearing united states attorney martin who was the lead prosecutor for mr. baranski the appellant's criminal case testified at the hearing mr. Carmen himself testified at the hearing after all that testimony and receiving all of the evidence the district court made its conclusions based on the credibility of those witnesses and the key finding that the district court made as it relates to this rule 35 issue which I'd like to talk about in just a second here is is there was no promise and there was no offer and I respectfully disagree with my opposing counsel about the word promise in the word expectation mr. car me testified at the trial that he was not promised to rule 35 and that he never expected one so we're not just dealing with the word promise he had no expectation and the district court found that testimony compelling and it found it credible and it found that mr. car me did not put her himself when he before you move on counsel on the matter of standard of review the district court concluded that the records of which the petitioners complaining wouldn't have opened a new avenue of impeachment anyway is that right yes your honor it absolutely is that a conclusion of law or conclusion of fact I think well I think that whether or not it would have had open new avenues of impeachment is a question of fact your honor because in this case the district court and holding the evidentiary hearing was also the court that handled the underlying criminal trial and so that court was able to see the proceedings the criminal trial proceedings firsthand it knew what the impeachment was at the criminal trial and it then again heard the evidence evidentiary hearing I know this may be the meaning of the phrase new Avenue is really a legal question though isn't it and then I look at the facts to see whether this legal principle has been undermined or not I would agree with that your honor let me and let me clarify my point in other words the district court knew what the avenues of impeachment were at the criminal trial right so that is a finding of fact that should be reviewed for clearly on a erroneous standard the effect that impeachment might have had maybe certainly a mixed question that this court could could review and let's be clear when mr. car me testified at the criminal trial he was extensively examined about whether or not he believed or expected that a rule 35 promise would be made he was extensively in fact not only was he cross-examined about it and that matter was put before the jury but the appellant was able to put on extrinsic evidence of whether or not he believed the rule 35 promise had been made so the district court in evaluating whether or not any of this material would have opened up new lines of impeachment was able to assess what would have been the value had they have had the transcript or any of these other documents that the appellant believes he should have been entitled to have I was speaking I was speaking mainly to the documents that would go to impeachment yes your honor and let me talk about if you want to move on from that that's fine you mentioned the rule 35 what explained to me why judge Weber's statements are not should be given a lot of weight here certainly your honor first James car me testified and the district court made a finding a fact that he didn't hear judge Weber's comments those are having a lot he did not hear judge Weber's comments so he could not have been laboring under the expectation that he was going to get a rule 35 because of those comments he district court made that very specific finding a fact secondly the district court found that judge Weber's comments didn't refer to a rule 35 promise I agree with counsel that there was commentary about the likelihood of a potential sentencing reduction from some unknown basis or unknown reason that some indefinite time in the future they were very conditional furthermore what did they refer to well in in any case judge if a defendant were to come up with some sort of new information or or or some some new revelatory point they could always come back and approach the government and say government we've learned of something would you consider what are you talking about 30 rule 35 or what it would depend on when it would happen in the proceedings but yes your honor that would be a possibility well I mean help me with this I used to be anyway that rule 35 ocean couldn't be made with after a year after judgment I guess it was or some some of that I forget that is correct your honor at the time this proceeding took place the rule was that the rule 35 had to be filed within one year and the district court found that as as a finding of fact yeah and it gave that as it cited that as one of the eight reasons that it gave for why no rule 35 promise or expectation or offer had been made among the other multitude of reasons why the court found based on the credibility witnesses it didn't happen so in other words to your question when judge Weber was talking at sidebar with counsel that that is that that discussion was no different than in any discussion that there's always a possibility that somebody could come forward but let me make a further point about judge Weber's comments in the sentencing proceeding the appellant asked to have the sentencing transcript turned over asked in discovery and before the magistrate court for the government to disclose it the district court found and it is the case that the government didn't have the sentencing transcript certainly we were aware of the information because we are deemed to be aware of it but we didn't have it so instead what James Martin the US attorney at the time and who handled the criminal case did is he told the appellant where to go to get it he said I don't have the sentencing transcript you can go and get it from the court reporter in other words there was parity between the parties the government had no greater access to the sentencing transcript than the then the defendant did at the time he knew where to get it how to get it he could have filed a motion to unseal it just like there was a fact not in their possession yes there was a fighting the fact that the government didn't possess it so in other words so even so it doesn't really matter because they could have been that this was information it was within their control it was it was information that was within their control to discover yes sir yes your honor it was information that they had access to certainly it was under seal that they could have done just what the government did after the trial which is filed a motion done seal and go get it and that's that's the salient point that I'm trying to make in our brief your honors is is that and it also goes to the abuse of the writ the appellant here had access to all of the information so when you refer to other documents earlier judge Arnold that could have led to new lines of impeachment say whether that's Bureau of Prison Records things like that those were litigated those were brought before the magistrate court so so the for instance he could have subpoenaed the Bureau of Prisons and I respectfully disagree with counsel sure you would have to go through some procedures to get them whether that's to a regulations or other procedures but there are avenues that you can go and get the information the appellant could have done that but chose not to that are the documents that he's claiming were suppressed were not suppressed under the standards of Brady because they knew of the existence of the information they cross-examined mr. Carmen about his memory loss about brain damage about any cooperation he had all of those matters but before the jury your honor and to the extent that they could have gotten additional documents they could have subpoenaed them they could have subpoenaed witnesses from the Bureau of Prisons they could have gone through any procedures to call those people before the tribunal they chose not all quite anyway the district court not only found that it wouldn't be helpful your honor they said that it would be cumulative all of those issues before before the jury at the time it could have been and ironically mr. Cartman about those various I'm sorry just looking did you have a question no okay now mr. Baranski has already served his sentence mr. Baranski had served his has already served his sentence yeah his term of supervised release that was termed that was over yes how does that play into all of this is that something what are the what a car what are what adverse consequences is he facing that warrant this kind of relief well mr. Baranski was convicted for trying to falsely you fill out false forms to import hundreds if not thousands of automatic weapons he wants his conviction expunged so that he can go back into the firearms dealing business that's part of the record he's saying that he is laboring from an adverse consequence of having a felony conviction which prohibits him from trying to import falsely in the beginning the district court did find that he was suffering from adverse consequences your honor and and the government doesn't dispute that finding do we have a case on that issue on the adverse consequence issue there are there are some that were cited in the briefs that the parties filed before the district court about whether or not a mere the mere stain of a felony conviction can rise to the level of an adverse consequence and courts disagree on that subject your honor do we have a case from the 8th circuit on that point not that I'm aware of from the 8th circuit your honor there are some that say it has to be more than just the stain of the felony conviction or the or the lack of the right to be able to vote but mr. Baranski is at the time at least during the proceedings leading up to the evidentiary hearing was unemployed he wasn't claiming that he couldn't find a job or anything like that but you're not the government's not standing and we would agree with the district courts fighting the fact that he is suffering from an adverse consequence although this court could certainly because it's the noble review find that just the felony conviction is not sufficient but we're not disputing that your honor unless there are other questions I'd like to to conclude by saying that going back to my original starting point which is that the government believes that this is an abuse of the writ because all remember that quorum nobis is an extremely rare remedy reserved for the rarest of cases and based on my research I am unaware of the 8th circuit ever ever granting quorum nobis a writ of quorum nobis let me ask you a question about that yes sir there's a lot of a lot of apocalyptic talk about how this is something that hardly ever happens and indeed there's a there's a first circuit case in which I think Judge Selya compares quorum nobis to a Hail Mary in a football game I wonder is is that really about the standard of review or is that just about just a statement about how as a factual matter quorum nobis hardly ever works because for one thing the sentence having been served and all the the evidence to support those kinds of claims may simply be unavailable I mean is this really a statement about the standard of review that we're supposed to bring to this these kinds of records that we're it's kind of almost a hands-off sort of something like for instance the standard that applies when somebody wants a mandate recall so what's what is your yes your honor I do think it's a standard of review issue but I think it also depends I think one of the reasons that the Supreme Court said and it's cited in our in our briefs is is that it's it it is hard to conceive of a case in which quorum nobis review would be warranted or getting a writ of quorum nobis would be would be warranted simply because leading up to this proceeding there have been so many opportunities for the for the appellant to have brought these matters before a tribunal and litigated them so so just because of the opportunities and secondly in part because of that the court has said this is the law in quorum nobis and it is reserved for only the rarest of cases and I do think that that does go to the standard of review so it's not just it's just an error of law that the appellant has to show it has to rise to that extraordinary level I see that my time is up your honors thank you I would ask this court to affirm the district courts judgment the 72 page memorandum in order thank you all right how much time does counsel have about two minutes yeah a little over two minutes you may proceed thank you your honor I'll run through these points really quickly counsel's Carmen comment about clear error I think most of our criticisms of the memorandum opinion had to do with what I would call irrelevancies it doesn't matter if the offer was contained in a particular document it doesn't matter whether it's customary to have a 5k 1.1 motion followed by a rule rule 35 a lot of the findings are basically of that nature the fact that car me testified that he didn't expect to rule 35 at trial is not does not support the fact that that he didn't expect when he lied when he said that and I think it's pretty clear that he lied when he said that it certainly contradicts judge Weber as far as no new avenues concerned the problem here is we I think trial counsel thought that there was a possibility that there might have been something out there about further relief but when they tried to explore it they had no evidence we had no facts to support this kind of stuff and so that was why these things weren't contained in in in prior proceedings here this is a very unique case and it goes to some of the discussion at the end of counsel's presentation about the unusual where eight years after the fact by a chance occurrence mr. Bransky got his hands on a letter from car me's counsel that showed that there had been a rule 35 offer and that car me had lied when he denied it that was in a meeting with Dean Hogue of the a USA's office here and using that this whole avalanche of information came out this court has basically held that the standards are similar in 2255 and quorum novus cases treated them you know sometimes if somebody filed one at the wrong time and said okay well we just treated it you know as as the other one so my time is up but thank you and we would urge reversal in this case thank you thank you counsel well-argued it is submitted